IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KELLY E. TESTER-KOPEC, | CASE NO. 1:25-cv-1 |
| Plaintiff, | DISTRICT JUDGE<br>BRIDGET MEEHAN BRENNAN |
| vs. | |
| COMMISSIONER OF SOCIAL<br>SECURITY, | MAGISTRATE JUDGE<br>JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff Kelly Tester-Kopec filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the Court affirm the Commissioner's decision.

**Procedural history**

In July 2020, Tester-Kopec filed an application for Supplemental Security Income alleging a disability onset date of July 23, 2020,[1] and claiming

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

she was disabled due to hearing loss in both ears, cholesteatoma[2] inside her left ear, progressive arthritis, thyroid removal, ovarian cysts removal, and left arm issues. Tr. 15, 177, 195. The Social Security Administration denied Tester-Kopec's application and her motion for reconsideration. Tr. 75, 82. Tester-Kopec then requested a hearing before an Administrative Law Judge (ALJ), Tr. 108, and in January 2022, an ALJ held a hearing during which Tester-Kopec and a vocational expert testified. Tr. 28–68.

In February 2022, the ALJ issued a written decision finding that Tester-Kopec was not disabled. Tr. 15–23. Tester-Kopec ultimately appealed to federal court, Tr. 1114, and the court vacated the Commissioner's decision and remanded to the Agency, Tr. 1116–33. In September 2024, a different ALJ held an administrative hearing in which Tester-Kopec, a medical expert, and a vocational expert testified. Tr. 1058–89. The next month, the ALJ issued a written decision finding that Tester-Kopec was not disabled. Tr. 1037–48.

Tester-Kopec appealed to this Court on January 2, 2025.[3] Doc. 1. She asserts the following assignments of error:

---

[2]     A cholesteatoma is a cyst-like mass or benign tumor that is generally found in the middle ear. *See* Dorland's Illustrated Medical Dictionary 354 (33rd ed. 2020).

[3]     The ALJ's decision became final when Tester-Kopec filed a Complaint in this Court. When a federal court remands a case to the Social Security Administration, the subsequent ALJ's decision becomes the final decision where, as here, a claimant does not appeal that decision to the Appeals Council. *See* 20 C.F.R. § 416.1484(a), (d).

1. The ALJ failed to comply with the order of the U.S. District Court and once again failed to properly consider and explain rejection of restrictions assessed by James Bircher, D.O., who performed a consultative examination for the agency.

2. The RFC is not supported by substantial evidence, and the ALJ committed legal error by rejecting Plaintiff's subjective allegations and failing to comply with 20 C.F.R. § 416.929.

3. The jobs of document preparer (DOT 249.587-018), surveillance system monitor (DOT 379.367-010), and addresser (DOT 209.587-010) are obsolete, as explained in Emergency Message 24027, and the ALJ did not elicit vocational testimony confirming the currency of these positions.

Doc. 9, at 5.

### Evidence

*Personal and vocational evidence*

Tester-Kopec was 42 years old on the date she filed her disability application. Tr. 1046. She completed eleventh grade and used to work as a dishwasher and a cafeteria food service worker. Tr. 196, 1083.

*Medical evidence*

In September 2019, Tester-Kopec underwent testing which showed findings that were "concerning for a left middle ear cholesteatoma." Tr. 382.

In July 2020, Tester-Kopec saw orthopedist Mark Musgrave, M.D., for left shoulder pain. Tr. 257. The pain had been present for six to seven months before the appointment. Tr. 257. On exam of her shoulder, Tester-Kopec had no swelling, atrophy, or deformity. Tr. 259. She had normal strength, pain with

3

range of motion, and positive impingement signs. Tr. 259. Dr. Musgrave diagnosed left shoulder impingement and complete rotator cuff tear or rupture. Tr. 260. He prescribed a home exercise program and advised Tester-Kopec to follow up if her symptoms did not improve. Tr. 260.

In August 2020, Tester-Kopec saw her family doctor Joseph Blackburn, M.D., and complained of joint pain, swelling, and stiffness in her thumbs and ankles. Tr. 480. Tester-Kopec requested a referral to an arthritis specialist. Tr. 480. Dr. Blackburn wrote that previous testing was negative for rheumatoid factor and antinuclear antibodies. Tr. 480. He commented that Tester-Kopec's complaints of arthritic pain were "frequent and long-standing." Tr. 480. On exam, Tester-Kopec had normal strength and range of motion in her extremities and no joint deformities. Tr. 480–81. She reported some pain relief with Celebrex, a nonsteroidal anti-inflammatory, which she did not take every day. Tr. 480.

Later in August 2020, an MRI of Tester-Kopec's left shoulder showed a rotator cuff tear—"high grade partial thickness articular sided tear anterior fibers of the supraspinatus tendon." Tr. 632. In September 2020, Tester-Kopec followed up with Dr. Musgrave, who recommended shoulder surgery. Tr. 541.

In January 2021, Tester-Kopec underwent surgery on her left ear. Tr. 555–58. At a February follow-up appointment, she reported that her ear felt better than it had before the operation. Tr. 654. In March, her hearing was better. Tr. 681. But in May, the doctor assessed likely recurrent cholesteatoma

4

in Tester-Kopec's left ear and a perforation of the tympanic membrane in Tester-Kopec's right ear. Tr. 678–79.

In July 2021, Tester-Kopec returned to Dr. Blackburn. Tr. 852. She complained of "long-standing" hand and foot pain that made it difficult to hold a car steering wheel. Tr. 852. Tester-Kopec said that it was hard for her to walk and she frequently needed to sit. Tr. 852. Her exam findings showed full range of motion and normal strength in her extremities. Tr. 853. X-rays of Tester-Kopec's ankles and hands were unremarkable. Tr. 692, 853.

Five days later, Tester-Kopec saw James Bircher, D.O., at the Agency's request for a consultative exam. Tr. 798. Dr. Bircher listed Tester-Kopec's allegations of disability, including hearing loss in both ears, left shoulder pain, and lower back pain. Tr. 798. He stated that Tester-Kopec "seem[ed] to be a reliable historian." Tr. 798. Tester-Kopec reported that she could sit and stand for "not long," walk one block, and lift ten pounds. Tr. 799. On exam, Tester-Kopec had difficulty hearing and Dr. Bircher had to raise his voice. Tr. 801. Tester-Kopec had good hand-eye coordination and normal sensation and reflexes. Tr. 801. She had an unsteady gait and "required" a cane. Tr. 801. Tester-Kopec had no joint swelling or tenderness. Tr. 801. She could lift, carry, and handle objects with her right hand, but showed "limited" left arm function due to left shoulder pain and weakness. Tr. 801. Dr. Bircher commented that Tester-Kopec could "rise from a sitting position with cane and had mild difficulty getting up and down from the exam table." Tr. 801. Due to her left

5

shoulder issues, Tester-Kopec needed help taking off and putting on her sweater. Tr. 801–02.

Dr. Bircher opined that Tester-Kopec could sit, stand, and walk, and that she required a cane. Tr. 802, 805. He explained that other than "severely limited left shoulder motion and strength as documented," Tester-Kopec had normal strength and range of motion. Tr. 802, 804. Dr. Bircher opined that Tester-Kopec "will have difficulty" walking for more than an hour, standing for an hour, and lifting twenty pounds. Tr. 802. Tester-Kopec "should be able to sit for an hour." Tr. 802. Dr. Bircher reiterated that Tester-Kopec had diminished hearing "requiring louder volumes for conversation." Tr. 802.

Later in July 2021, Tester-Kopec saw Dr. Musgrave for an evaluation of ankle pain. Tr. 811. Tester-Kopec reported that she experienced ankle pain "for a while," but it seemed to be getting worse. Tr. 811. She said that her ankles were stiff, particularly in the morning, and that at times she had pain in her calves. Tr. 811. Her symptoms were aggravated by walking, walking on uneven ground and hills, and climbing stairs, and improved by elevating her legs. Tr. 811. Tester-Kopec used a cane "for mobilization." Tr. 811. On exam, Tester-Kopec had tenderness to palpation of her right ankle and no edema or effusion, a normal range of motion, and intact sensation. Tr. 813. Dr. Musgrave assessed right ankle and foot pain and advised Tester-Kopec to continue a home exercise program. Tr. 813–14.

In October 2021, Tester-Kopec saw Dr. Blackburn for joint pain and swelling. Tr. 833. Tester-Kopec said that steroids and Meloxicam were ineffective and that Celebrex worked best. Tr. 833. On exam, Tester-Kopec had a full range of motion and normal strength in her extremities. Tr. 834. Dr. Blackburn prescribed Celebrex. Tr. 834.

In November 2021, an ear, nose, and throat doctor commented that Tester-Kopec had persistent conductive hearing loss in her left ear. Tr. 1021. Tester-Kopec had another left-ear surgery in early 2022, Tr. 1331, and at an appointment 14 months later there was no sign of recurrence, Tr. 1332.

In April 2023, Tester-Kopec went to the emergency room for pain and swelling in her right foot after tripping while walking down a set of stairs. Tr. 1336. The doctor diagnosed a soft tissue injury. Tr. 1338.

In June 2024, Tester-Kopec visited a foot and ankle clinic and expressed an interest in obtaining orthotics for flat feet and ankle deformities. Tr. 1904. She said that her ankles felt unstable. Tr. 1904. Tester-Kopec reported experiencing pain in her fifth toe and described catching that toe while "attempting to step over a baby gate." Tr. 1904. X-rays showed no arthritis and mild flat foot. Tr. 1906. An exam showed limited upward ankle flexion. Tr. 1906. Tester-Kopec was fitted for ankle braces. Tr. 1906. The doctor prescribed a short course of steroids, physical therapy, and a one-month follow-up visit. Tr. 1906.

About two weeks later, Tester-Kopec saw Dr. Musgrave for right shoulder pain. Tr. 1964. Tester-Kopec had pain with range of motion and Dr. Musgrave assessed right-shoulder impingement. Tr. 1966. A subsequent MRI revealed abnormalities. Tr. 2047.

In July 2024, Tester-Kopec saw Dr. Blackburn. Tr. 1969. Tester-Kopec requested a back injection for pain and she wanted to talk about her ankles. Tr. 1969. On exam, Tester-Kopec had full strength and range of motion in her upper and lower extremities. Tr. 1970. Dr. Blackburn assessed Tester-Kopec with lower back pain and administered a Toradol injection. Tr. 1970. He assessed "unspecified osteoarthritis" based on Tester-Kopec's reports that she had difficulty walking due to her ankles being "dislocated." Tr. 1970. Tester-Kopec requested more detailed diagnostics than x-rays, and Dr. Blackburn ordered a CT scan, Tr. 1970, which showed mild degenerative changes in Tester-Kopec's right ankle, Tr. 1978.

A few days later, Tester-Kopec saw Sara Noureldin, M.D., for a consultative exam. Tr. 1913–19. Tester-Kopec reported vertigo and difficulty hearing. Tr. 1913. She said that she had left arm issues, including swelling, stiffness, and pain. Tr. 1913. She said that she could not lift her left arm. Tr. 1913. Tester-Kopec listed her current medications as Naproxen as needed and Toradol injections every three to six months. Tr. 1913. Dr. Noureldin performed an exam and commented that Tester-Kopec appeared older than her stated age and was in mild distress. Tr. 1916. Tester-Kopec had an unsteady

gait and used a cane "due to a fall risk." Tr. 1917. She had left shoulder tenderness, but no swelling or deformity, and she was able to lift, carry, and handle light objects. Tr. 1917. Her fine and gross manipulative abilities were normal. Tr. 1917. Tester-Kopec couldn't squat, get up or down from the exam table, or walk on her heels and toes. Tr. 1917. She couldn't stand or hop on one foot due to vertigo. Tr. 1917.

Dr. Nourelin listed Tester-Kopec's probable diagnoses as severe hearing impairment, chronic ankle instability, high fall risk, left arm osteoarthritis, and severe ankle pain. Tr. 1918. Dr. Nourelin listed the exam findings to support her diagnoses as an unsteady gait, left shoulder tenderness, an inability to walk without cane, limited mobility, and instability. Tr. 1918. She opined that Tester-Kopec had severe limitations with sitting due to pain and vertigo. Tr. 1918. Tester-Kopec had severe limitations with standing, walking, lifting, and carrying due to pain, vertigo, high risk of falling, and ankle instability. Tr. 1918. Tester-Kopec had severe limitations reaching, grasping, handling, fingering, and feeling due to severe pain, vertigo, and a high risk of falling. Tr. 1918. She needed a cane to walk short and long distances and on uneven terrain. Tr. 1918.

*State agency opinions*[4]

In September 2020, Dimitri Teague, M.D., reviewed Tester-Kopec's record and assessed Tester-Kopec's residual functional capacity (RFC).[5] Tr. 78–79. Dr. Teague opined that Tester-Kopec could perform light work— occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Tr. 78–79. Dr. Teague found that Tester-Kopec could frequently climb ladders, ropes, and scaffolds and stoop, kneel, crouch and crawl. Tr. 79. He also found that Tester-Kopec was limited to "frequent hearing." Tr. 79.

In September 2021, Leslie Green, M.D., reviewed Tester-Kopec's record, including Dr. Bircher's report. Tr. 83–88. Dr. Green affirmed Dr. Teague's findings and added environmental restrictions based on Tester-Kopec's hearing loss. Tr. 88–89.

---

[4]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[5]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

*Hearing testimony*

Tester-Kopec, who was represented by counsel, testified at both of the telephonic administrative hearings.

*January 2022 hearing*. Tester-Kopec confirmed that she had left ear surgery a year before the hearing to remove a cholesteatoma. Tr. 41. Her condition hadn't improved—if anything, it had worsened. Tr. 42. Her surgeon, now retired, told Tester-Kopec that she had eustachian tube collapse. Tr. 42. Tester-Kopec stated that she "just can't hear very well at all." Tr. 43. She became dizzy and had balance problems. Tr. 43. When she sat or stood up, she had to "go real slow." Tr. 44. Tester-Kopec hadn't fallen, but she was "wobbly." Tr. 44–45.

Tester-Kopec stated that she experienced headaches, which could occur every other day. Tr. 45–46. Medication prevented severe migraines. Tr. 47. Tester-Kopec's headaches caused light and sound sensitivity and nausea. Tr. 47–48. Tester-Kopec experienced dizziness, which also caused nausea. Tr. 48.

Tester-Kopec said that she had arthritis in her hands, ankles, lower back, and hips. Tr. 49. She had difficulty gripping and holding things. Tr. 49. She had a 50 percent rotator cuff tear in her left shoulder. Tr. 50. She had no strength in her left arm and couldn't reach overhead, in front, or to the side. Tr. 50–51. Tester-Kopec said that she used a cane, which was not prescribed, for arthritis and dizzy spells. Tr. 51–52. She stated that her ankles swelled and she elevated her legs. Tr. 52.

Tester-Kopec testified that, due to ankle pain, she didn't think she could walk a block. Tr. 52. She estimated that she could stand for a couple of minutes. Tr. 53. Tester-Kopec said that she could sit for as long as necessary. Tr. 53. She could lift a couple of pounds with her right arm. Tr. 53. Tester-Kopec's arthritis medication helped her symptoms. Tr. 54.

*September 2024 hearing*. Tester-Kopec stated that because of her ankle problems, she no longer drives. Tr. 1064. She last drove a car a few months before the hearing, and even at that time she only took short trips due to her fear of experiencing vertigo. Tr. 1064.

When asked why she is unable to work, Tester-Kopec answered that she has hearing loss in one of her ears. Tr. 1069. Her arm and hand arthritis has worsened, and she has no strength in these areas. Tr. 1070. Her ankles are unstable and she wears braces, which make it difficult to walk. Tr. 1070. Tester-Kopec uses a cane while walking in her house, and she planned to ask her doctor to prescribe her an electric wheelchair and a walker. Tr. 1070.

When questioned by her counsel about medication side-effects, Tester-Kopec said that her thyroid medication causes brain fog and mastoid powder for her ear causes lightheadedness and dizziness. Tr. 1071. Tester-Kopec explained that she couldn't walk without using a cane because her balance is not good. Tr. 1071. She is afraid of falling. Tr. 1072. When asked if she had fallen before, Tester-Kopec said that she had, and that she broke her toe. Tr. 1072.

Tester-Kopec testified that she experiences "a lot of swelling" in her ankles and feet. Tr. 1073. She has to elevate her legs. Tr. 1073. Tester-Kopec said that she can't lift "anything" and hardly has any strength in her hands. Tr. 1073. She has a rotator cuff tear and bursitis in her shoulder. Tr. 1073–74. When asked how she can hold onto her cane, Tester-Kopec explained that she "just ha[s] to try"—she takes "baby steps and go[es] slow." Tr. 1074. She cannot navigate stairs. Tr. 1074. Tester-Kopec cannot perform any household chores, and her daughter helps her dress. Tr. 1075. Sometimes Tester-Kopec goes with her daughter to the store and utilizes "one of those motorized carts to sit in." Tr. 1074–75.

A medical expert, Dr. Golub, testified at the hearing. Tr. 1077. After Dr. Golub summarized his review of Tester-Kopec's medical evidence, Tr. 1078–80, the ALJ asked him whether Tester-Kopec had any functional limitations as a result of her impairments, Tr. 1080. Dr. Golub answered that he couldn't describe any functional limitations because "most of those physical issues that [Tester-Kopec] has reported are subjective in nature meaning that . . . I didn't see any diagnosis that would support her degree of clinical symptoms." Tr. 1080. Dr. Golub explained that he "can't offer … restrictions or limitations based on just subjective reporting." Tr. 1080–81. The ALJ said that "[i]t does look like every now and then … one of the doctors give some degree of limitations" and asked whether Dr. Golub believed that the limitations "the doctors may have given … are subjective in nature rather than based on a

diagnosis." Tr. 1081. Dr. Golub responded that the doctors' assessed limitations are "not based on a firm foundation as to what the etiology is. If there was attention provided it was based on [Tester-Kopec's] subjective reporting." Tr. 1081. He concluded that he d[id]n't have information here that would be objective or at least indicate what the underlying etiology is." Tr. 1081.

Next, the ALJ discussed with the vocational expert Tester-Kopec's past work as a dishwasher and cafeteria food worker. Tr. 1083. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work history as Tester-Kopec could perform Tester-Kopec's past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 1083. The vocational expert answered that such an individual could not perform Tester-Kopec's past work but could perform the following jobs: document preparer, surveillance systems monitor, and addresser. Tr. 1083–84. The vocational expert explained that since the Dictionary of Occupational Titles was last updated in 1991, the way that workers perform these three jobs has changed. Tr. 1084. He described how workers at the time of the hearing performed the jobs. Tr. 1084–85.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant has not engaged in substantial gainful activity since July 23, 2020, the application date (20 CFR 416.971 *et seq*.).

14

2. The claimant had the following severe impairments: osteoarthritis, irritable bowel syndrome, left shoulder rotator cuff tear and impingement syndrome, ankle pain, vertigo, and conductive hearing loss (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can reach over overhead occasionally. She can frequently handle and finger. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can have no exposure to unprotected heights, hazardous machinery, or commercial driving. The claimant is limited to work performed in a moderate noise environment, consistent with an office setting.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was … 42 years old, which is defined as a younger individual, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

15

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 23, 2020, the date the application was filed (20 CFR 416.920(g)).

Tr. 1040–47.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is

16

disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.  Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains

'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1. The ALJ did not err when she evaluated Dr. Bircher's opinion*

Tester-Kopec argues that the ALJ failed comply with the Court's prior decision remanding this case by "once again fail[ing] to properly consider and explain [the] rejection of restrictions assessed by [Dr.] Bircher." Doc. 9, at 15.

18

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id*. "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

To recap: the Court vacated and remanded Tester-Kopec's prior case because the ALJ failed to discuss the supportability factor when he evaluated Dr. Bircher's opinion. Tr. 1127–32. Then, on remand, a different ALJ evaluated Tester-Kopec's disability application and issued a written decision. Tr. 1027–48. In this decision, the ALJ explained why she discounted Dr. Bircher's opinion:

> Dr. Bircher stated that the claimant required help getting dressed and undressed due to left shoulder dysfunction (12F/5). The claimant had diminished hearing requiring louder volumes for conversation (12F/5). She demonstrated normal fine motor coordination and handling (12F/5). Dr. Bircher asserted that the claimant would have difficulty walking for over one hour, standing for 60 minutes, and lifting 20 pounds (12F/5). Dr. Bircher noted that the claimant could sit for an hour (12F/5). The undersigned finds Dr. Bircher's opinion persuasive in part. He examined the claimant but his assessment was relatively vague, noting that the claimant would have difficulty walking over 1 hour, standing for 60 minutes, and lifting 20 pounds, but he did not explain her maximum functioning level or if the standing and walking limitations were at one time or for the entire workday. Nevertheless, his exam generally supported his finding that the claimant was limited to sedentary work broadly. However, his exam did not support the finding that the claimant could sit for only an hour and Dr. Bircher did not explain what findings supported such limitation. Additionally, Dr. Bircher's opinion was inconsistent with the evidence as a whole. The record did not show an ongoing need for an ambulatory aid. Indeed, recent records, aside from a one-time consultative exam in 2024, did not show use of a cane and the claimant generally had a normal gait. While the claimant had ankle pain and instability, such symptom improved with use of braces. Furthermore, despite shoulder pain and

20

> limited motion the claimant had only intermittent complaints and treatment for such conditions. Accordingly, Dr. Bircher's opinion was not supported by his own exam and was inconsistent with the evidence as a whole.

Tr. 1044.

Tester-Kopec argues that the ALJ erred with respect to the supportability factor. Doc. 9, at 17–18. She claims that the ALJ's use of the term "support" was hollow talk and "clearly inadequate." *Id.* at 17; Doc. 12, at 1–2. But this is not so. The ALJ cited may reasons why Dr. Bircher's opinion was unsupported, and all of these reasons are accurate and proper.

First, the ALJ accurately characterized Dr. Bircher's opinion as "vague." The ALJ commented that Dr. Bircher opined that Tester-Kopec would "have difficulty walking over 1 hour, standing for 60 minutes, and lifting 20 pounds" without describing the most that Tester-Kopec's could do, in functional terms. Tr. 1044. *See, e.g.,* 20 C.F.R. § 416.945(a)(1) (defining a claimant's RFC as "the most you can still do despite your limitations."); *see Maldonado v. Comm'r of Soc. Sec.*, No. 1:24-cv-415, 2025 WL 1104886, at *22 (N.D. Ohio Apr. 14, 2025) (a doctor's "vague" opinion goes to the supportability factor). The ALJ also noted that Dr. Bircher didn't describe whether Tester-Kopec would have difficulty performing these tasks "at one time or during the entire workday." Tr. 1044. This, too, erodes the supportability of Dr. Bircher's opinion.[6] Finally,

---

[6]     In her reply brief, Tester-Kopec characterizes Dr. Bircher as having "limited" Tester-Kopec to walking, standing, and sitting for "no more than an hour." Doc. 12, at 2. But Dr. Bircher wrote that Tester-Kopec would "have

the ALJ observed that Dr. Bircher didn't cite anything to support his finding that Tester-Kopec could only sit for an hour, and commented that Dr. Bircher's exam findings did not support such a limitation. Tr. 1044. This is accurate, Tr. 799–803 (Dr. Bircher's report), and goes to the supportability factor, s*ee* 20 C.F.R. § 416.920c(c)(1) ("[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be.").

In her reply brief, Tester-Kopec complains that Dr. Bircher's opinion that she needs a cane was "not vague." Doc. 12, at 2. Aside from the fact that Dr. Bircher didn't state under what conditions Tester-Kopec would need the cane, which makes the restriction vague, the ALJ rejected this restriction as inconsistent with other evidence in the record, Tr. 1044, a factual finding that Tester-Kopec does not challenge. And Tester-Kopec hasn't cited legal authority stating that an ALJ must evaluate for supportability and consistency *each finding* within an opinion.[7] Such a reading is contrary to the expressed purpose of the regulations. *See Riney v. Comm'r of Soc. Sec.*, No. 5:23-cv-1776, 2024 WL

---

difficulty" walking and standing for more than an hour and that she "should be able to sit" for an hour, Tr. 802, which is not the same as an unequivocal opinion that Tester-Kopec could not stand, walk, or sit for more than an hour. And it doesn't clear up the question of whether Dr. Bircher was referencing Tester-Kopec's total abilities during an eight-hour workday or her at-one-time abilities.

[7]     Moreover, if Tester-Kopec were attempting to make such an argument, she would have forfeited it because she raised it for the first time in her reply brief. *See United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) ("An argument first presented to the Court in a reply brief is waived.").

898561, at *13 (N.D. Ohio Feb. 15, 2024) (citing authority), *report and recommendation adopted*, 2024 WL 895157 (N.D. Ohio Mar. 1, 2024).

In short, the ALJ discussed the supportability factor when evaluating Dr. Bircher's opinion, and her explanation is supported by substantial evidence. So Tester-Kopec's argument that the ALJ erred in this respect fails, as does her related argument that the ALJ failed to follow the Court's 2023 remand order directing the ALJ to discuss the supportability factor when evaluating Dr. Bircher's opinion, Doc. 9, at 15, Tr. 1116–33.

### 2. The ALJ did not err when she evaluated Tester-Kopec's symptoms

Next, Tester-Kopec argues that the ALJ erred when she evaluated Tester-Kopec's allegations regarding her symptoms. Doc. 9, at 19.

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529. Other relevant evidence includes: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). "The ALJ need not analyze all seven

factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

Tester-Kopec argues that the ALJ only relied on a "boilerplate paragraph" and did not "adequate[ly] expla[i]n ... why the ALJ ultimately rejected Plaintiff's allegations." Doc. 9, at 19 (citing Tr. 1042); Doc. 12, at 4. She complains that "the ALJ never offers examples of discrepancies between the subjective allegations and the other medical evidence in this record." Doc. 9, at 20, 23–25. But after discussing the evidence in the record, the ALJ concluded:

> With respect to the claimant's alleged symptoms and limitations, the undersigned finds such assertions only partially consistent with the evidence. The record showed that the claimant had ongoing shoulder pain for which she took medication, but it does not appear that she followed up with more substantive treatment. She had pain, limited motion, and some weakness, but she demonstrated generally normal fine and gross manipulative abilities. Additionally, the claimant had ankle instability and osteoarthritis. While she said she used a cane and she had a cane at times, the balance of the treatment notes did not indicate use of a cane and she had a normal gait.

> Furthermore, her ankle instability improved with braces. She had only intermittent abdominal symptoms and vertigo. Such facts suggest that she could perform the reduced range of [sedentary] work described in the residual functional capacity. Additionally, the claimant's hearing loss and ear condition stabilized with treatment and she

24

> remained able to hear in a moderate noise environment consistent with the residual functional capacity.
>
> In sum, the above residual functional capacity assessment is supported by the objective medical evidence of record and the opinions of the individuals that have had the opportunity to review the claimant's records and examine the claimant. Furthermore, the undersigned does not find that the claimant's symptoms are so severe as to prohibit her from performing all basic work activities. The residual functional capacity set forth above addresses the claimant's symptoms to the degree supported by the evidence as a whole.

Tr. 1045–46. Tester-Kopec ignores these passages. Other than claiming that the ALJ's reasons are "[in]adequate," Doc. 9, at 19, she has not challenged any of the ALJ's specific findings reproduced above.

Tester-Kopec complains that the ALJ failed to explain why she discounted Tester-Kopec's assertion that "that surgeries did not improve her hearing or eliminate bouts of vertigo." Doc. 9, at 19. But the ALJ found that Tester-Kopec "had only intermittent vertigo" and could still perform a reduced range of sedentary work. Tr. 1046. *See* 20 C.F.R. § 404.1529(c)(3)(ii) (an ALJ considers the duration and frequency of symptoms). As for hearing loss, the ALJ explained that despite this, Tester-Kopec remained "able to hear in a moderate noise environment." Tr. 1046; *see also* Tr. 1042–43 (ALJ reciting evidence about Tester-Kopec's hearing loss, including that from April 2023 and "into 2024," Tester-Kopec's "hearing condition" was described as "stable" with "moderate to mild conductive hearing loss bilaterally"); *see also* Tr. 1040 (ALJ

25

describing Tester-Kopec's hearing scores); 20 C.F.R. § 404.1529(c)(2) (an ALJ considers objective evidence).

Tester-Kopec contends that the ALJ failed to provide an adequate explanation for rejecting Tester-Kopec's allegation "that she cannot reach overhead with her left arm due to a rotator cuff tear." Doc. 9, at 19. But the ALJ observed that Tester-Kopec hadn't "followed up with more substantive treatment," which is an appropriate factor for the ALJ to consider. *See* 20 C.F.R. § 404.1529(c)(3)(v) (an ALJ considers treatment the claimant received); *see also Blacha v. Sec'y of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (claimant's failure to seek treatment undercut complaints of disabling symptoms). The ALJ also wrote that although Tester-Kopec "had shoulder pain, limited motion, and some weakness, … she demonstrated generally normal fine and gross manipulative abilities." Tr. 1045; *see* 20 C.F.R. § 404.1529(c)(2) (providing that an ALJ "will consider" "objective medical evidence" "in reaching a conclusion as to whether [a claimant is] disabled").

Tester-Kopec alleges that the ALJ didn't adequately evaluate her assertion that she needs a cane for balance due to instability in both ankles, Doc. 9, at 19, but the ALJ did so, Tr. 1046 (ALJ explaining that "the balance of the treatment notes did not indicate use of a cane and she had a normal gait," and that "her ankle instability improved with braces."). *See* 20 C.F.R. § 404.1529(c)(2), (3)(v),(vi) (describing an ALJ's "[c]onsideration of other evidence"). As for Tester-Kopec's reports of "pain in her hands, ankles, hips,

and lower back," Doc. 9, at 19, the ALJ explained that Tester-Kopec "demonstrated generally normal fine and gross manipulative abilities," that treatment notes showed that Tester-Kopec had a normal gait, and that ankle braces helped. Tr. 1046; *see also* Tr. 1043 (ALJ observing that Tester-Kopec said that her ankle braces helped her ankle pain and that an MRI showed mild degenerative changes in her right ankle).

Tester-Kopec argues that the ALJ failed to adequately evaluate the following statements Tester-Kopec made at the hearing: she experiences back and hip pain, she can't drive, and she needs to elevate her legs "to reduce the swelling in her feet and ankles." Doc. 9, at 19–20. But the ALJ is not required to discuss every symptom that a claimant alleges. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for [her] decision to stand."); *Byler v. Kijakazi*, No. 5:20-cv-1822, 2022 WL 980099, at *9 (N.D. Ohio Jan. 21, 2022) ("Although Plaintiff understandably disagrees with the ALJ's decision, the law does not require the ALJ to discuss every piece of evidence that is supportive or inconsistent with the RFC. And … the ALJ cannot be expected to discuss every piece of evidence that Plaintiff believes is inconsistent with the RFC."), *report and recommendation adopted*, 2022 WL 971384 (N.D. Ohio Mar. 31, 2022); *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 807 (E.D. Mich. 2013) ("[T]he fact an ALJ did not specifically state every piece of evidence or every symptom is not an error").

27

Finally, Tester-Kopec recites evidence that she believes supports the severity of her symptoms. Doc. 19, at 20–22. But citing evidence and disagreeing with the ALJ's conclusion does not show that the ALJ erred. *See, e.g., Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) ("The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."). And, to the extent that Tester-Kopec asserts that the ALJ erred because the RFC isn't supported by any medical opinion, Doc. 9, at 21–22, Doc. 12, at 3, such an argument would fail, *see, e.g., Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding").

### 3. The ALJ did not err at step four

The ALJ found that Tester-Kopec could perform the jobs of document preparer, surveillance system monitor, and addresser. Tr. 1047. Tester-Kopec argues that this was error because these jobs "are obsolete, as explained in [the Agency's] Emergency Message 24027, and the ALJ did not elicit vocational testimony confirming the currency of these positions." Doc. 9, at 26; Doc. 12, at 7–8.

To the contrary, the vocational expert at the hearing expressly commented on the obsolete nature of these jobs as the Dictionary of Occupational Titles defined them in 1991 and described how these positions

28

were performed at the time of the hearing, in 2024. Tr. 1084–85. The ALJ in her written decision discussed this issue and cited the vocational expert's testimony. Tr. 1047. Tester-Kopec hasn't explained what, precisely, she thinks was an error.[8] Her step four argument fails.

## Conclusion

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: June 25, 2025

                              */s/ James E. Grimes Jr.*
                              James E. Grimes Jr.
                              U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).

---

[8]    Tester-Kopec appears to fault the ALJ for not "inquir[ing] into the issue of currency at all." Doc. 12, at 7. But before the ALJ could inquire, the vocational expert provided the information. Tr. 1084. If Tester-Kopec believes that this sequence of events is reversable error, she fails to cite authority to support such an argument.