UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY E. TESTER-KOPEC, | ) | CASE NO.  1:25-cv-00001 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Magistrate Judge James E. Grimes' Report and Recommendation ("R&R") recommending the Commissioner of Social Security's decision be affirmed.  (Doc. 13.)  Plaintiff Kelly E. Tester-Kopec ("Tester-Kopec") timely filed objections (Doc. 14), and Defendant Commissioner of Social Security ("Defendant") responded.  (Doc. 15.)

For the following reasons, Tester-Kopec's objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the Commissioner's final decision is AFFIRMED.

I.  BACKGROUND

A.  **Tester-Kopec's Medical History**

Tester-Kopec does not object to the factual record and procedural history in the R&R. (*See* Doc. 14.) [1]  Notwithstanding, the Court summarizes the facts pertinent to Tester-Kopec's objections.

In her application for Supplemental Security Income ("SSI"), Tester-Kopec claimed hearing loss in both ears, cholesteatoma in her left ear, progressive arthritis, thyroid removal,

---

[1] For ease and consistency, briefing citations reflect the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

ovarian cysts removal, and left arm issues. (Doc. 13 at 2662.) She previously worked as a dishwasher and a cafeteria food service worker. (*Id.* at 2663.)

In September 2019, test results showed concerns about a left middle ear cholesteatoma. (*Id.*) In July 2020, Tester-Kopec saw an orthopedist for her left shoulder pain. (*Id.*) This exam noted no swelling, atrophy, or deformity, and normal strength, but pain with range of motion and positive impingement signs. (*Id.* at 2663-64.) Tester-Kopec was diagnosed with left shoulder impingement and complete rotator cuff tear or rupture and given a home exercise program. (*Id.* at 2664.) In August 2020, she complained of joint pain, swelling, and stiffness in her thumbs and ankles. (*Id.*) Tester-Kopec exhibited normal strength and range of motion and no joint deformities, and testing showed she was negative for rheumatoid factor and antinuclear antibodies. (*Id.*) An MRI showed a rotator cuff tear and Tester-Kopec was recommended to undergo shoulder surgery in September 2020. (*Id.*)

In January 2021, Tester-Kopec underwent surgery on her left ear, and reported feeling better following the operation. (*Id.*) In May, Tester-Kopec showed signs of a recurrent cholesteatoma and a perforation in her right ear. (*Id.* at 2664-65.) In July 2021, she complained of hand and foot pain that made it hard to walk or drive, though her exams showed full range of motion and normal strength in her extremities. (*Id.* at 2665.) X-rays were unremarkable. (*Id.*) That month, Tester-Kopec saw Dr. James Bircher ("Dr. Bircher") for a consultative exam. (*Id.*) He noted hearing loss in both ears, left shoulder pain, lower back pain, unsteady gait, and reliance on a cane. (*Id.*) In sum, Dr. Bircher noted Tester-Kopec had normal strength and range of motion but would have difficulty walking for more than an hour, standing for an hour, or lifting twenty pounds. (*Id.* at 2666.) In July 2021, Tester-Kopec also saw a doctor to assess her right ankle and foot pain and was advised to continue a home exercise program. (*Id.*)

In October 2021, Tester-Kopec was seen for joint pain and swelling and exhibited full range of motion and normal strength.  (*Id.* at 2667.)  In November 2021, she was diagnosed with persistent conductive hearing loss in her left ear.  (*Id.*)  Tester-Kopec underwent surgery in early 2022 and exhibited no signs of recurrence at an appointment fourteen months later.  (*Id.*)  In April 2023, Tester-Kopec went to the emergency room after tripping down a flight of stairs.  (*Id.*)

In June 2024, Tester-Kopec inquired about orthotics for flat feet and ankle deformities.  (*Id.*)  Tester-Kopec was fitted for braces, prescribed steroids, referred to physical therapy, and ordered to attend a follow-up appointment.  (*Id.*)  Two weeks later, she was seen for pain in her right shoulder and diagnosed with right shoulder impingement after an MRI revealed abnormalities.  (*Id.* at 2668.)  In July 2024, Tester-Kopec was assessed with "unspecified osteoarthritis" after requesting a CT scan.  (*Id.*)  She stated she had difficulty walking due to her ankles dislocating.  (*Id.*)

A few days later, Tester-Kopec reported vertigo, difficulty hearing, as well as swelling, stiffness, and pain in her left arm to Dr. Sara Noureldin ("Dr. Noureldin").  (*Id.*)  Tester-Kopec exhibited unsteady gait and used a cane.  (*Id.* at 2669.)  She could not squat, get up or down from the exam table, or jump on one foot.  (*Id.*)  Dr. Noureldin diagnosed Tester-Kopec with severe hearing impairment, chronic ankle instability, a high fall risk, left arm osteoarthritis, and severe ankle pain.  (*Id.*)  In Dr. Noureldin's opinion, Tester-Kopec had severe limitations in sitting, standing, walking, motor skill (i.e., lifting, carrying, grasping, and feeling) because of pain, vertigo, ankle instability, and high risk of falling.  (*Id.*)

### B. State Agency Opinions

In September 2020, Dr. Dimitri Teague ("Dr. Teague") assessed Tester-Kopec's residual

functional capacity ("RFC") and determined she could perform light work. (*Id.* at 2670.) In September 2021, Dr. Leslie Green ("Dr. Green") reviewed this conclusion and affirmed Dr. Teague's finding, adding environmental restrictions based on Tester-Kopec's hearing loss. (*Id.*)

### C. Tester-Kopec's First Administrative Hearing and Appeal

In January 2022, Tester-Kopec, who was represented by counsel, testified at an administrative hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 2671.) In February 2022, the ALJ found Tester-Kopec was not disabled. (*Id.* at 2662.) Tester-Kopec appealed. The decision was vacated and the matter remanded for further proceedings consistent with the Court's October 20, 2023, Order. (*Id.*); *see Kopec v. Comm'r of Soc. Sec.*, No. 1:23-CV-680, 2023 U.S. Dist. LEXIS 188606, 2023 WL 6958636 (N.D. Ohio Oct. 20, 2023) ("*Tester-Kopec I*").

At issue in *Tester-Kopec I* was the ALJ's determination that "the treatment notes did not establish the need for a cane or that [Tester-Kopec] could walk, stand, or sit for only one hour." *Id.* at *5. The ALJ also highlighted the treatment notes "failed to document substantial problems with [Tester-Kopec] being on her feet or sitting" and "the ongoing need for a cane or any ambulatory aid." *Id.* She appealed the ALJ's decision and argued the ALJ failed to discuss the supportability factor of Dr. Bircher's testimony. *Id.* at *6. The court agreed. *Id.* In the court's October 20, 2023, Order, the court found "the ALJ's explanation about the inconsistency of Dr. Bircher's opinion with other evidence in the record doesn't fulfill the ALJ's obligation to explain the supportability factor." *Id.* The court also found the ALJ's exclusion of supportability was not harmless error. *Id.* at *7. As a result, the court determined the ALJ "erred in evaluating Dr. Bircher's opinion" and remanded the case so that the supportability factor of Dr. Bircher's findings could be addressed.

### D. Tester-Kopec's Second Administrative Hearing

A second administrative hearing then took place in September 2024. Tester-Kopec testified. (Doc. 13 at 2671-73.) Dr. Steven Golub ("Dr. Golub"), a medical expert, testified he could not describe any functional limitations because most of Tester-Kopec's physical issues were subjective in nature. (*Id.* at 2673.) Thomas Nimberger ("Mr. Nimberger"), a vocational expert, testified Tester-Kopec could not perform her previous work but could perform the duties of a document preparer, surveillance systems monitor, and addresser. (*Id.* at 2674.) Mr. Nimberger testified about how these jobs were performed at the time of the hearing. (*Id.*)

While the ALJ found Tester-Kopec had severe impairments, namely osteoarthritis, irritable bowel syndrome, left shoulder rotator cuff tear and impingement syndrome, ankle pain, vertigo, and conductive hearing loss, these impairments alone or in combination were insufficient to meet or be medically equal to the severity of one of the impairments listed in 20 CFR Part 404, Subpart P. (*Id.*) The ALJ found Tester-Kopec could perform sedentary work as defined in 20 CFR § 416.967(a). Tester-Kopec could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She could have no exposure to unprotected heights, hazardous machinery, or commercial driving. Tester-Kopec was also limited to work performed in a moderate noise environment, consistent with an office setting. (*Id.*) In sum, the ALJ concluded Tester-Kopec did not establish a disability as defined by 20 CFR § 404.1520(g) and 20 CFR § 419.920(g) during the relevant period. (*Id.* at 2676.)

### E. Procedural History

In July 2020, Tester-Kopec filed an application for SSI, claiming a disability onset date of July 23, 2020. (*Id.* at 2661.) The Social Security Administration denied her application and motion for reconsideration. (*Id.* at 2662.) At Tester-Kopec's request, a hearing before an ALJ

occurred in January 2022, where Tester-Kopec and a separate vocational expert testified.  (*Id.*)  In February 2022, the ALJ issued a written decision finding Tester-Kopec was not disabled.  (*Id.*)

In *Tester-Kopec I*, the Commissioner's decision was vacated and the matter remanded for further proceedings.  In September 2024, a different ALJ held an administrative hearing where Tester-Kopec, a medical expert, and Mr. Nimberger testified.  (*Id.*)  The ALJ concluded she was not disabled.  (*Id.*)

On January 2, 2025, Tester-Kopec appealed the second ALJ's finding to this Court (Doc. 1) raising three assignments of error (Doc. 9 at 2605).  On June 25, 2025, the R&R recommended the Court affirm the Commissioner's final decision.  (Doc. 13.)  Tester-Kopec timely submitted four specific objections.  (Doc. 14.)  The Commissioner responded.  (Doc. 15.)

## II.  LAW AND ANALYSIS

### A.  Standard of Review

A district court "shall make a de novo determination of those portions or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 U.S. App. LEXIS 35044, 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.") (citations omitted).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled. To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).

During the first four steps, the claimant bears the burden of proof. *Walters*, 127 F.3d at 529. The "burden shifts to the Commissioner only at step five." *Id.*

The Court's review of the Commissioner's decision to deny benefits is limited to

determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).  "The standard 'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'"  *Edwards v. Comm'r of Soc. Sec.*, No. 23-5490, 2024 U.S. App. LEXIS 3315, 2024 WL 2705000, at *2 (6th Cir. Feb. 12, 2024) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (citation omitted)).  If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently.  *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).  The Commissioner's decision must be affirmed even if the claimant's position is also supported by substantial evidence.  *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (Table), 2000 U.S. App. LEXIS 24244, 2000 WL 799749, at *1 (6th Cir. 2000) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

**B.    First Objection: Compliance with the October 20, 2023 Order**

In October 2023, Tester-Kopec's case was remanded so "[t]he ALJ [could] explain the supportability factor [and] whether and to what extent Dr. Bircher's opinion was supported by Dr. Bircher's own evaluation of [Tester-Kopec]."  *Kopec*, 2023 WL 6958636, at *6.

In determining the persuasiveness of a medical opinion, ALJs consider several factors:

"the opinion's supportability and consistency; the treating source's relationship with the claimant and specialization; and other factors, such as the medical source's familiarity with other evidence relevant to the claim." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 U.S. App. LEXIS 14411, 2024 WL 2955645, at *5 (6th Cir. June 12, 2024); 20 C.F.R. § 404.1520c.  Of these factors, "the two most important are supportability and consistency." 20 C.F.R. § 404.1520c(b)(1); *Sallaz*, 2024 WL 2955645, at *5 ("Supportability and consistency are 'the most important factors,' and the ALJ must explain her consideration of them."). "[T]he ALJ may, but is not required to, explain how she considered the other factors." *Sallaz*, 2024 WL 2955645, at *5; 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are two distinct concepts. *See* 20 C.F.R. § 404.1520c(1)-(2). Supportability goes to "how well a medical source's own objective findings and explanations support [its] own medical opinion." *Ford*, 2023 WL 2088157, at *17; 20 C.F.R. § 404.1520c(1). Consistency goes to "how consistent a medical opinion is with the record evidence from other medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-524, 2023 U.S. Dist. LEXIS 27912, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023); 20 C.F.R. § 404.1520c(2). In assessing both, "an ALJ 'need not necessarily use the words "supportability" or "consistency," as long as the ALJ still performs the requisite analysis of these factors,' and a reviewing court is able to follow the ALJ's reasoning." *Id.* at *18 (quoting *Todd A. v. Kiljakazi*, No. 20-cv-594, 2021 U.S. Dist. LEXIS 221864, 2021 WL 5348668, at *4-5 (E.D. Va. Nov. 16, 2021)). An ALJ is also not required to discuss each piece of data in their opinion so long as they "consider the evidence as a whole and reach a reasoned conclusion." *Bosley v. Comm'r of Soc. Sec. Admin*, 397 F. App'x 195, 199 (6th Cir. 2010).

Tester-Kopec challenges supportability only. To her, the ALJ's analysis "added

additional wording" but failed "to conform to the regulations" because it did not adequately address the supportability factor of Dr. Bircher's opinion. (Doc. 14 at 2692.) Tester-Kopec also argues Dr. Bircher's opinion is not "vague" and urges this Court to find the ALJ's opinion did not provide "any additional accurate information." (*Id.* at 2691-92.)

Defendant points out that Tester-Kopec's objection begins with an argument about consistency, not supportability. (Doc. 15 at 2703.) This challenge was not raised in her Brief to the magistrate judge and "should be deemed forfeited." (*Id.*) Next, Defendant highlights that the parties agree the ALJ's discussion of vagueness weighs on the supportability of Dr. Bircher's opinion. (*Id.* at 2704.) Therefore, "the only question is whether substantial evidence supports the ALJ's decision finding Dr. Bircher's opinion vague." (*Id.*)

Tester-Kopec's argument that the ALJ's wording does not add to its analysis is not supported by the record. The ALJ described Dr. Bircher's assessment as "relatively vague" despite his personal examination of Tester-Kopec. (Doc. 7 at 1076.) This holding is an assessment of his opinion's supportability. *See Molnar v. Comm'r of Soc. Sec.*, 2024 U.S. Dist. LEXIS 62615, 2024 WL 1521243, at *13 (N.D. Ohio Apr. 3, 2024) (affirming ALJ's opinion that "vague" limitations "detracted from any meaningful supportability of this opinion"); *see also Maldonado v. Comm'r of Soc. Sec.*, 2025 U.S. Dist. LEXIS 70236, 2025 WL 1104886 at *2 (N.D. Ohio Apr. 14, 2025) (discussing vagueness and supportability).

The ALJ also noted both where Dr. Bircher's exam generally supported his findings and where it did not. (Doc. 7 at 1076.) The ALJ found Dr. Bircher's conclusion Tester-Kopec is "limited to sedentary work broadly" was "generally supported." (*Id.*) In contrast, the ALJ noted Dr. Bircher's exam "did not support the finding that [Tester-Kopec] could only sit for an hour" because he "did not explain what findings support such limitation." (*Id.*) The ALJ also noted

Dr. Bircher's exam "did not show an ongoing need for an ambulatory aid" but rather reflected that Tester-Kopec described "only intermittent complaints and treatment" for her shoulder pain, improvement in her ankle pain, and instability with braces. (*Id.*)  Finally, the ALJ concluded "Dr. Bircher's opinion was not supported by his own exam and was inconsistent with the evidence as a whole." (*Id.*)  Taken together, the ALJ's analysis properly added specific observations of supportability. (*Compare id.* at 53 *with id*. at 1076.)  "If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently." *Wallace*, 221 F.3d 1337 at *1.  This objection is OVERRULED.

        C.        **Second Objection: The R&R's Description of Dr. Golub's Testimony**

To Tester-Kopec, the R&R misleadingly and inaccurately described Dr. Golub's testimony.[2]  (Doc. 14 at 2692-93.)  "[N]one of the medical source opinions supported the ALJ's RFC," and the R&R mistreated Dr. Golub's analysis of her symptoms.  (*Id.* at 2693.)

In the last sentence, Tester-Kopec suggests Dr. Golub's testimony was not sufficient to support the RFC analysis.  (Doc. 14 at 2693.)  Defendant does not address this section of Tester-Kopec's objection.  (*See* Doc. 15 at 2704-05.)

As referenced above, the Court must affirm the Commissioner's conclusions unless "the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008).  Substantial evidence exists when the "existing administrative record . . . contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019) (citations omitted).

---

[2] This objection largely challenges the R&R's summary of Dr. Golub's testimony in the fact section.  This part of the objection is without merit.

Dr. Golub's testimony supports the ALJ's decision.  To start, Dr. Golub testified he read Tester-Kopec's medical files.  (Doc. 7 at 1110.)  Dr. Golub discussed Tester-Kopec's ear and pain issues, and her medical history regarding both.  (*Id.* at 1110-11.)  While Dr. Golub conceded he is not qualified to assess Tester-Kopec's ear issues, he did state her other pain issues do not meet or medically equal an impairment described in the listing of impairments.  (*Id.* at 1112.)  He also agreed that "any of the limitations the doctors may have given [Tester-Kopec] are subjective in nature rather than based on a diagnosis."  (*Id.* at 1112-13.)  Dr. Golub additionally testified he "can't offer you restrictions or limitations based on just subjective reporting" of Tester-Kopec's pain.  (*Id.*)

To Tester-Kopec, Dr. Golub's inability to testify to *any* restrictions meant the ALJ's use of his testimony to support her RFC is deficient.  (Doc. 14 at 2693.)  But Dr. Golub ultimately concluded Tester-Kopec has functional limitations that result from her impairments.  (Doc. 7 at 1112.)  He only declined to go into further detail because he did not "have information here that would be objective or at least indicate what the underlying etiology is."  (*Id.*)  The ALJ included this admission in her evaluation of Dr. Golub's opinion.  (*Id.* at 1077.)  Ultimately, the ALJ still found Dr. Golub's opinion persuasive because he "examined the entire record and based his assessment on his review of the evidence."  (*Id.*)  While Dr. Golub was unable to assess what specific restrictions might apply to Tester-Kopec, he concluded that a functional limitation of some form likely existed.  (*Id.* at 1112.)  Although Tester-Kopec disagrees with the ALJ's evaluation of Dr. Golub's testimony, it is correctly part of the substantial evidence she drew from to support her RFC.  Tester-Kopec's second objection is OVERRULED.

> **D.      Third Objection: The ALJ Did Not Sufficiently Explain Inconsistencies Between Tester-Kopec's Testimony and Other Evidence**

Tester-Kopec's third objection is that the ALJ erred by rejecting her subjective

allegations.  (Doc. 14 at 2694.)  Tester-Kopec lists the conditions the ALJ allegedly did not consider in sufficient detail:

> (1) her surgeries did not improve her hearing or eliminate bouts of vertigo;
>
> (2) she cannot reach overhead with her left arm due to a rotator cuff tear;
>
> (3) she needs a cane for balance due to instability in both ankles;
>
> (4) that she has pain in her hands, ankles, hips, and lower back;
>
> (5) she is no longer able to drive; and
>
> (6) she needs to elevate her lower extremities to reduce the swelling in her feet and ankles.

(Doc. 14 at 2695.)  At its heart, Tester-Kopec's objection is a claim the ALJ did not properly consider all evidence in the record before making her decision.  (*Id.*) ("The unexplained ambiguities—between the ALJ's findings regarding Plaintiff's description of her symptoms and the actual record—warrant remand.").

20 C.F.R. § 404.1529(c)(2) provides that ALJs will not "reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."  ALJs must "consider all of the available evidence," including a claimant's "statements about the intensity, persistence and limiting effects of your symptoms."  20 C.F.R. § 404.1529(c)(4).  In accordance with these regulations, "[s]ubjective complaints of pain or other symptoms may support a claim of disability."  *Blankenship v. Bowen*, 874 F.3d 1116, 1123 (6th Cir. 1989).  Even so, "these complaints must be evidenced by an underlying medical condition, and there must be either objective medical evidence confirming the severity of the alleged pain, or there must be an objectively determined medical condition of a severity which can reasonably be expected to give rise to that pain."  *Id.* (citing *McCormick v. Sec'y of Health & Hum. Servs.*,

861 F.3d 998, 1003 (6th Cir. 1988) and *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.3d 847 (6th Cir. 1986)); *see also Cohen v. Sec'y of Dep't of Health & Hum. Servs.*, 964 F.2d 524, 529 (6th Cir. 1992) (a claimant "may rely in part on her own testimony *in combination with* objective medical evidence in order to establish that she is disabled") (emphasis in original).

ALJ's use a two-step process to evaluate a claimant's symptoms. 20 CFR § 404.1529(c)(3); 416.929(c)(3); Soc. Sec. Ruling 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017), 2017 WL 5180304. First, the ALJ determines whether the individual has a medically determinable impairment that could produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3. Next, the ALJ evaluates the intensity, persistence, and limiting effects of the claimant's symptoms. *Id*. at *4. "[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . . [The ALJ] must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." *Id.* at *5.

Tester-Kopec argues the ALJ failed to explain inconsistencies between her testimony and other evidence, while also failing to discuss in sufficient detail other symptoms in Tester-Kopec's record. (Doc. 14 at 2694.) To Tester-Kopec, because her symptoms "appear to be disabling," they "may not properly be ignored on the basis of the cherry-picked normal findings." (Doc. 14 at 2694 (citing *Moore v. Comm'r of Soc. Sec. Admin.*, No. 5:24-cv-1175, 2025 U.S. Dist. LEXIS 114971, 2025 WL 1692398, at *12 (N.D. Ohio June 17, 2025)).) Tester-Kopec acknowledges, however, the R&R identifies excerpts from the ALJ's decision discussing these subjective allegations, but argues these passages "were not connected by a logical bridge from [her] testimony to the ALJ's conclusion." (*Id.* at 2695.)

Defendant counters that the ALJ articulated several reasons why Tester-Kopec's testimony was inconsistent with her medical records. (Doc. 15 at 2705-07.) Defendant emphasizes specific passages from the R&R highlighting instances where the ALJ found Tester-Kopec's treatment and other evidence were "only partially consistent with the evidence." (*Id.* at 2705-06.) Defendant argues Tester-Kopec's objection fails to challenge the legal or factual sufficiency of the ALJ's reasoning. (*Id.* at 2707.) Instead, the objection "points to other evidence [Tester-Kopec] claims supports her subjective complaints," which is insufficient to support remand. (*Id.*)

The Court is unpersuaded by Tester-Kopec's argument. To start, the ALJ properly evaluated Tester-Kopec's descriptions of her symptoms and the medical evidence, even addressing many of the symptoms that she outlines in her Objection. (Doc. 7 at 1077-78.) The ALJ found Tester-Kopec's assertions "only partially consistent with the evidence." (*Id.*) The ALJ also discussed Tester-Kopec's ongoing shoulder pain and her lack of follow-up for "more substantive treatment." (*Id.*) The ALJ then detailed Tester-Kopec's pain, limited motion, and "some weakness," but that medical evaluations showed "generally normal fine and gross manipulative abilities." (*Id.*) The ALJ further mentions that Tester-Kopec's vertigo is intermittently discussed in her medical records. (*Id.*) Regarding Tester-Kopec's use of a cane and instability, the ALJ discusses that "the balance of the treatment notes did not indicate use of a cane and she had a normal gait." (*Id.* at 1078.) The ALJ also noted Tester-Kopec's ankle instability improved with braces. (*Id.*)

To be sure, the ALJ does not specifically mention Tester-Kopec was unable to drive and needed to "elevate her lower extremities to prevent swelling in her feet and ankles." (Doc. 14 at 2695.) But the ALJ's finding is not subject to reversal simply because there is "substantial

evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The ALJ was also not required to "discuss every piece of evidence in the record to substantiate [their] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016). "An ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("ALJ[s] can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). ALJs are also "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772. Given the ALJ's thorough discussion of Tester-Kopec's testimony and medical history, reversal is not warranted. Tester-Kopec's third objection is OVERRULED.

    E.  **Fourth Objection: Failure to Comply with Emergency Message 24027**

  Tester-Kopec challenges the ALJ's reliance on jobs like "document preparer, surveillance system monitor, and addresser." (Doc. 14 at 2696.) At Tester-Kopec's hearing, Mr. Nimberger described the ways in which these positions have changed since being defined in 1991. (*Id.*) Tester-Kopec argues his testimony was insufficient to meet the ALJ's duty to "rely on jobs that still exist in significant numbers" and show these occupations as currently performed are consistent with Tester-Kopec's RFC. (*Id.*)

> Emergency Message 24027 ("E.M. 24027") provides that:
>
> An adjudicator may not cite any of the DOT occupations listed below to support a framework 'not disabled' determination or decision without additional evidence from a VS or VE supporting the adjudicators conclusion that, as the occupation is currently performed:
>
> (1) Its requirements are consistent with the individual's RFC, and
>
> (2) It exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant.

E.M 24027.  Further, "[t]he determination or decision must include or summarize the VS or VE's evidence that supports such a conclusion."  *Id.*  This standard applies if an ALJ intends to rely upon specific occupations to support a decision of "not disabled."  The occupations cited by the ALJ in the instant case—addresser, document preparer, and surveillance system monitor—all appear on the list of occupations included in E.M. 24027.

Tester-Kopec argues E.M. 24027 was not complied with because Mr. Nimberger's testimony failed to confirm that the national numbers for these positions are significant as they relate to how these jobs are currently performed.  (Doc. 14 at 2697.)  Defendant disagrees with Tester-Kopec's characterization, highlighting that Mr. Nimberger testified how these jobs are practiced in the present-day.  (Doc. 15 at 2708.)  Defendant also asserts Mr. Nimberger discussed the present number of these jobs in the national economy.  (*Id.*)

*E.M. 24027 Step One.*  Based upon Tester-Kopec's medical and vocational history, Mr. Nimberger described why he believed she would be qualified to serve as a document preparer, surveillance systems monitor, and addresser.  (Doc. 7 at 1116.)  Critically, when the ALJ asked if a hypothetical person with Tester-Kopec's same conditions could perform other work, Mr. Nimberger stated these three occupations are consistent with her RFC.  (*Id.* at 1116-17.)

*E.M. 24027 Step Two.*  Mr. Nimberger also testified about the number of these positions in the national economy.  Mr. Nimberger stated that a document preparer has a "national number" of 14,000, a surveillance system monitor has a national number of 15,500, and an addresser has a national number of 1,700.  (*Id.* at 1116.)  In the aggregate, the national number of positions for these jobs is 31,200.

"[T]here is no 'magic number' that qualifies as 'significant' for purposes of satisfying this prong of the disability inquiry."  *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir.

2010) (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). "The question of whether a significant number of jobs exists in light of a vocational expert's testimony 'should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (quoting *Bowen*, 837 F.2d at 275). That said, the Sixth Circuit has found as few as 2,000 jobs to be significant. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (2,000 jobs significant). Case law indicates 31,200 jobs is significant. [3]

Tester-Kopec claims Mr. Nimberger did not discuss how the above jobs are currently performed. But the transcript establishes the opposite. Mr. Nimberger testified how each job has changed since the DOT manual was published in 1991. (Doc. 7 at 1116-17.) Mr. Nimberger also explained "the number [of positions] are very paltry compared to the hundreds of thousands I used to be able to quote 20 years ago." (*Id.*) On cross-examination, Mr. Nimberger also testified that the "database for national jobs wouldn't be reduced" except a "little bit" for document preparer were Tester-Kopec to use a cane. (*Id.*)

Mr. Nimberger discussed how the national numbers for these jobs are reduced in comparison to what they were 20 years ago, indicating the recency of his estimate. (*Id.*) He also discussed how each of these jobs have evolved over time. (*Id.* at 1116-18.) When providing occupational evidence, a vocational expert "may use any reliable source of occupational information that is commonly used by vocational professionals and is relevant under our rules, along with their professional knowledge, training, and experience." *See* SSR 24-3p. Left to the

---

[3] *See also Doran v. Comm'r of Soc. Sec.*, 467 F. App'x 446, 449 (6th Cir. 2012) (significant because "thousands of these jobs exist on a national basis"); *Born v. Sec'y of Health & Human Servs.,* 923 F.2d 1168, 1174-75 (6th Cir.1990) (2,500 jobs significant); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs significant); *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (32,000 jobs significant).

Court's "common sense," the record shows Mr. Nimberger discussed national numbers that are significant and current. Accordingly, the ALJ complied with E.M. 24027. *Bowen*, 837 F.2d at 275. Tester-Kopec's fourth objection is OVERRULED.

## III. CONCLUSION

For the reasons above, Plaintiff Kelly E. Tester-Kopec's objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the final decision of the Commissioner of Social Security is AFFIRMED.

**IT IS SO ORDERED.**

Date: December 15, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE